## J. W. FORGEUS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2881.    Promulgated February 21, 1927.

1. Certain expenditures *held* to be deductible as ordinary and necessary expenses.

2. Useful life of building determined.

3. Legal expenses paid in defending a suit arising out of a transaction directly connected with the petitioner's business are ordinary and necessary expenses and as such are deductible.

*J. S. Lamson, Esq.,* and *Fred D. Bullock, C. P. A.,* for the petitioner.

*A. C. Mackay, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency of $1,180.86, income tax for 1919. Three questions are presented, namely, whether certain expenditures constituted capital items or ordinary and necessary expenses, the proper rate of depreciation allowable on petitioner's building, and the deductibility of certain legal expenses sustained in defending a suit.

### FINDINGS OF FACT.

The petitioner is a resident of Santa Cruz, Calif., and is engaged in farming and in buying, selling and developing farm properties.

In 1915 he acquired a business property at Tenth and Broadway, Oakland, consisting of a two-story brick building which had been erected in 1869. The first floor was occupied by stores and the upper floor contained offices. The building had a frontage on Broadway of 100 feet, 6 inches and a depth and frontage on Tenth Street of 125 feet. The useful life of the building at the date of acquisition was 15 years.

The basement under a portion of the sidewalk had been excavated at the time the building was erected. This part of the sidewalk was supported by 3 by 12 timbers which had become rotten

and decayed. In 1919 the danger of a cave-in of the sidewalk necessitated the immediate repair thereof. The petitioner contracted with an architect to make all necessary repairs and also to remodel a saloon in the building for use as a drug store. In the repair of the sidewalk it was necessary to remove most of the supporting timbers and replace them by new timbers. The old construction of 3 by 12 timbers supported 2-inch planks, on top of which was a layer of sand and then the sidewalk. Removal of the planks and timbers allowed the sand to filter through, so that the new timbers had to be wedged up to support the sidewalk. In some places the new timber had to be placed alongside of old, decayed supports infected with dry rot. The new lumber was of all sizes and was sprayed with creosote to resist infection. The holes in the sidewalk were repaired; leaking ventilators and sidewalk lights were cemented and made water tight. Basement floors were repaired, and in one place a new floor was put in to replace one that had decayed, the new flooring constituting about one-eighth of the total basement floor area. Window cords were replaced, and locks and other sundry items repaired. In the saloon certain repairs were made, such as painting of the old woodwork, wiring and plumbing. This work was exclusive of remodeling. The total cost of all the work was $7,500, of which $2,800 was for repairs to the sidewalks, $500 for the floors, locks, window cords and miscellaneous work, and $300 for wiring, plumbing and repainting in the saloon, exclusive of the new work.

On or about November 24, 1905, the petitioner and one Daniel W. Johnston purchased a ranch of approximately 14,000 acres, situated in Colusa County, California, with certain personalty thereon, consisting of sheep, hogs, cattle, horses, mules, and farm implements of all kinds. In 1919 the agents who negotiated the sale of this property to petitioner and Johnston filed suit for an accounting, alleging that there was an oral agreement whereby the former were to receive as compensation for making the sale a one-fourth interest in the moneys and property to be received on the subsequent sale thereof. The complaint alleged that there had been sales of portions of the property and that the petitioner and Johnston had never accounted to the complainants for their one-fourth share. The allegations of the complaint were denied, and, upon trial, judgment was rendered for the defendants.

The petitioner in defending this suit paid out in 1919 attorney fees and expenses of trial $2,552, distributed as follows: Attorney fees, $2,150; cost of taking depositions, $235; and expenses incident to trial, $167. During the taxable year petitioner paid $12.50 to an

attorney for preparing certain papers connected with his business, and also $50 for the preparation of his income-tax return.

The Commissioner disallowed the deductions for repairs and legal expenses, holding that the items should be capitalized. He allowed a depreciation rate on the building of 2½ per cent, based on a cost of $60,000.

## OPINION.

MORRIS: We are satisfied from the evidence that of the $7,500 expended in the year 1919, $3,600 constituted ordinary and necessary expenses which are deductible in computing the petitioner's net income for that year. See *Appeal of Illinois Merchants Trust Co.*, 4 B. T. A. 103. The building acquired by the petitioner in 1915 was constructed in 1869. Based on the uncontroverted evidence that its useful life from the date of acquisition was from 10 to 15 years, we are of the opinion the petitioner is entitled to a depreciation allowance at the rate of 6⅔ per cent on the cost of $60,000, which was used by the Commissioner.

The Commissioner contends that the expenses incident to the suit which was brought against the petitioner in 1919 are capital expenditures, as they represent the cost of quieting title to property. It appears, however, that the complainants did not contest the validity of the title of the defendants, but instituted suit for an accounting under an oral agreement that they were to share, as compensation for making the sale, in the proceeds of the subsequent sale thereof. It was a suit on a contract for compensation and not an attack on the title to the property. The business of the petitioner was, in addition to farming, developing country properties and buying and selling lands. The litigation in question clearly arose out of a transaction directly connected with his business. The expenses incident to such litigation, amounting to $2,552, are therefore deductible.

The items of $12.50 paid to an attorney for preparing certain papers connected with his business, and $50 for the preparation of his income-tax returns are also deductible as ordinary and necessary business expenses. In the *Appeal of Charles Henry Mattlage*, 3 B. T. A. 242, we held that an amount paid for the preparation of an individual Federal income-tax return was not deductible. It did not appear in that case, however, that the expenditure was in connection with the taxpayer's trade or business.

*Judgment will be entered on 15 days' notice, under Rule 50.*